Elaine WHITTENBERG et al.
v.
GREENVILLE COUNTY SCHOOL DISTRICT.

Millicent F. BROWN et al.
v.
SCHOOL DISTRICT 20, CHARLESTON COUNTY.

Theodore W. STANLEY et al.
v.
DARLINGTON COUNTY SCHOOL DISTRICT.

Roberta RANDALL et al.
v.
SUMTER SCHOOL DIST. 2.

Charles E. MILLER et al.
v.
SCHOOL DIST. 2 CLARENDON COUNTY.

Shirley Mae WHEELER et al.
v.
SCHOOL DIST. 3 CLARENDON COUNTY.

Van H. DeLEE et al.
v.
SCHOOL DIST. 3 DORCHESTER COUNTY.

Rebecca DRAYTON et al.
v.
SCHOOL DIST. 2 DORCHESTER COUNTY.

UNITED STATES

v.

LEXINGTON COUNTY SCHOOL DIST. 1.

UNITED STATES

v.

SCHOOL DIST. 2 CALHOUN COUNTY.

UNITED STATES

v.

SCHOOL DIST. 1 DORCHESTER COUNTY.

Rudolph W. ADAMS et al.

v.

SCHOOL DIST. 5 ORANGEBURG COUNTY.

Bobby BRUNSON et al.

v.

SCHOOL DIST. 1 CLARENDON COUNTY.

UNITED STATES

v.

ALLENDALE COUNTY SCHOOL DIST.

UNITED STATES

v.

ELLOREE SCHOOL DISTRICT.

UNITED STATES

v.

ANDERSON COUNTY SCHOOL DIST. 3.

Rodney ALBERT et al.

v.

BAMBERG COUNTY SCHOOL DIST. 2.

Sylvia SCOTT et al.

v.

LEE COUNTY SCHOOL DIST. 1.

UNITED STATES

v.

GEORGETOWN COUNTY SCHOOL DIST.

UNITED STATES

v.

BAMBERG COUNTY SCHOOL DIST. 2.

UNITED STATES

v.

NORTH SCHOOL DIST. 1 of HAMPTON COUNTY.

UNITED STATES

v.

CHESTERFIELD COUNTY SCHOOL DIST.

Civ. A. Nos. 4396, 7747, 7749, AC–1240, 8752, 8753, 66–183, 66–536, 66–96, 66–598, 68–697, 8301, 7210, 68–698, 67–628, 68–699, 68–830, 68–1065 and 69–43 to 69–46.

United States District Court
D. South Carolina.

March 31, 1969.

Donald James Sampson, Greenville, S. C., Matthew J. Perry, Columbia, S. C., Jack Greenberg, New York City, for Elaine Whittenberg and others.

E. P. Riley, Greenville, S. C., for Greenville County Schl. Dist.

Michael Davidson, Jack Greenberg, New York, N. Y., Matthew J. Perry, Columbia, S. C., F. Henderson Moore, Sr., Benjamin Cook, Jr., Charleston, S. C., for Millicent F. Brown and others.

Charles H. Gibbs, Burnet R. Maybank, Joseph H. McGee, Jr., Charleston, S. C., D. W. Robinson, Sr., A. T. Graydon, Columbia, S. C., for Schl. Dist. 20, Charleston County.

(Mrs.) Vilma Martinez Singer, Jack Greenberg, New York City, Matthew J. Perry, Columbia, S. C., Ernest A. Finney, Jr., Sumter, S. C., for Theodore W. Stanley and others.

Benny R. Greer, Darlington, S. C., for Darlington County Schl. Dist.

Mordecai Johnson, Florence, S. C., Matthew J. Perry, Columbia, S. C., Ernest A. Finney, Jr., Sumter, S. C., Jack Greenberg, New York City, for Roberta Randall and others.

Shepard K. Nash, Sumter, S. C., for Sumter Schl. Dist. 2.

Klyde Robinson, U. S. Atty., Matthew J. Perry, Columbia, S. C., Ernest A. Finney, Jr., Sumter, S. C., Jack Greenberg, New York City, for Charles E. Miller and others.

Matthew J. Perry, Columbia, S. C., Ernest A. Finney, Jr., Sumter, S. C., Jack Greenberg, New York City, for Shirley Mae Wheeler and others.

Marion S. Riggs, James M. Morris, Manning, S. C., for Schl. Dists. 2 and 3, Clarendon County.

Matthew J. Perry, Columbia, S. C., Ernest A. Finney, Jr., Sumter, S. C., Earl W. Coblyn, Orangeburg, F. Henderson Moore, Sr., Charleston, S. C., Jack Greenberg, New York City, for Van H. DeLee and others.

Sidney B. Jones, Jr., Summerville, S. C., Ben Scott Whaley, Charleston, S. C., for Schl. Dist. 3, Dorchester County.

Matthew J. Perry, Columbia, S. C., Ernest A. Finney, Jr., Sumter, S. C., F. Henderson Moore, Sr., Charleston, S. C., Jack Greenberg, New York City, for Rebecca Drayton and others.

Sidney B. Jones, Jr., Summerville, S. C., for Schl. Dist. 2, Dorchester County.

Klyde Robinson, U. S. Atty., Columbia, S. C., Frank E. Schwelb, Civil Rights Division, Dept. of Justice, Washington, D. C., for the United States in Nos. 66–96, 66–598, 66–697.

J. Means McFadden, Columbia, S. C., T. H. Rawl, Jr., Lexington, S. C., for Lexington County Schl. Dist. 1.

A. T. Graydon, Harry M. Lightsey, Jr., Columbia, S. C., for Schl. Dist. 2, Calhoun County.

J. Wilson Patrick, St. George, S. C., for Schl. Dist. 1, Dorchester County.

Matthew J. Perry, Columbia, S. C., Zack Townsend, Orangeburg, S. C., Jack Greenberg, New York City, for Rudolph W. Adams and others.

D. W. Robinson, Sr., Columbia, S. C., C. Walker Limehouse, Orangeburg, S. C., for Schl. Dist. 5, Orangeburg County.

Matthew J. Perry, Columbia, S. C., Jack Greenberg, New York City, for Bobby Brunson and others.

D. W. Robinson, Sr., Columbia, S. C., James M. Morris, Manning, S. C., for Schl. Dist. 1, Clarendon County.

Klyde Robinson, U. S. Atty., Columbia, S. C., Maceo W. Hubbard, Civil Rights Division, Dept. of Justice, Washington, D. C., for the United States in No. 68–698.

Thomas Lawton, Jr., Allendale, S. C., for Allendale County Schl. Dist.

Klyde Robinson, U. S. Atty., Columbia, S. C., Frank Hill, Frank M. Dunbaugh, Civil Rights Division, Dept. of Justice, Washington, D. C., for the United States in No. 67–628.

A. T. Graydon, J. Bratton Davis, Columbia, S. C., for Elloree Schl. Dist.

Klyde Robinson, U. S. Atty., Columbia, S. C., Stephen J. Pollack, Robert Hocutt, Maceo W. Hubbard, Civil Rights Division, Dept. of Justice, Washington, D. C., for the United States in No. 68–699.

William L. Thompson, Anderson, S. C., for Anderson County Schl. Dist. 3.

Matthew J. Perry, Columbia, S. C., for Rodney Albert and others and Sylvia Scott and others.

Harry M. Lightsey, Jr., Columbia, S. C., for Bamberg County Schl. Dist. 2, Lee County Schl. Dist. 1, North Schl. Dist. 1 of Hampton County.

Klyde Robinson, U. S. Atty., Columbia, S. C., for the United States in Nos. 69–43 to 69–46.

Grimes & Hinds, Georgetown, S. C., for Georgetown County Schl. Dist.

H. Simmons Tate, Jr., Columbia, S. C., for Chesterfield County Schl. Dist.

Daniel R. McLeod, Atty. Gen. of South Carolina, Columbia, S. C., for the State of South Carolina.

Before MARTIN, Chief Judge, and HEMPHILL, SIMONS and RUSSELL, District Judges.

## ORDER

All of the above actions seek desegregation of certain school districts in South Carolina. After hearings, decrees were entered in 13 of such actions and, for some time, the schools involved in those actions have been operated in conformity with such decrees. Nine of the actions, filed within recent months, have not proceeded to a decree. Following the decisions of the Supreme Court in Green v. County School Board (1968) 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716, and the two related cases of Raney v. Board of Education, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727 and Monroe v. Board of Commissioners,[1] 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733, this Court, sitting *en banc*, held a combined hearing in all these cases and entered an Order, applicable to all cases, that the defendant school districts should promptly submit such amendments, if any, to the existing decrees or, in the case of school districts not now operating under a decree, of their current method of operation, as might be necessary or appropriate to bring such decrees or their administration into conformity with the rulings in the *Green Case*. Pursuant to that order, all the school districts have made return, alleging generally that their present plans of operation, whether under a decree or as adopted by them without a decree, meet the criteria fixed by the Supreme Court.

The plaintiffs in all the actions, after reviewing the returns of the school districts, have entered their objections to those returns, contending that the outstanding decrees and plans of operation by the school districts do not comply with

1. For interesting comments on these decisions, see 21 Vanderbilt L.Rev. 1093 (1968) and 82 Har.L.Rev. 111–8 (1968).

the constitutional standards enunciated by the Supreme Court in the *Green Case*.

In this situation, the Court is faced with the task of fashioning decrees that will assure compliance by the school districts with the applicable constitutional standards. The school districts involved in these actions, however, vary considerably in composition and character; they require individual appraisal of their practical, administrative and educational condition; they do not lend themselves to a uniform type of decree.[2] Each school district must be dealt with separately, taking into consideration its own peculiar or unique situation and conditions. For instance, some are located in metropolitan areas where perhaps geographic attendance zones[3] or school pairings might offer possible avenues for acceptable compliance. Others, like Elloree School District or Clarendon School District #2, are situate in agricultural areas and have limited physical facilities. Thus, in Clarendon School District #2, the antiquated high school building used normally by white students can physically accommodate only 480 students, whereas the high school building, modern in every respect, attended normally by Negro students, has physical facilities for 840 students. The allocation of students between such physical accommodations on some rational educational and administrative lines, it is obvious, presents a difficult problem for judicial resolution. Moreover, the proportion and distribution of Negro students in the several school districts differ markedly, making for possible differences in the shape an appropriate decree might assume.[4]

It must be borne in mind that there are but 22 South Carolina school districts whose operations would be affected by decrees entered in these actions. There are, though, 93 school districts in South Carolina. All are confronted in some degree with the same problem of compliance faced by the school districts involved in these actions. Enforcement of compliance on the part of most of these districts, however, has been assumed not in adversary proceedings in the Courts, but by administrative action on the part of the office of Education of H. E. W. Thus, 34 school districts are either presently operating under, or will commence operating in September, 1969, under plans of compliance approved by H. E. W. Fourteen others are involved in administrative proceedings for enforcement of compliance, conducted under the authority of H. E. W.[5]

2. That each school district is entitled to the consideration of its own unique administrative problems in the formulation of a plan of desegregation seems evident from the comment of the Court in the second Brown v. Board of Education Case that, in developing its decree, the District Court should go into every aspect of "problems related to administration, arising from the physical condition of the school plant, the school transportation system, personnel, revision of school districts and attendance areas into compact units to achieve a system of determining admission to the public schools on a nonracial basis, * * *." 349 U.S. 294, 300–301, 99 L.Ed. 1083, 75 S.Ct. 753, 756.

3. Cf., however, Brewer v. School Board of City of Norfolk, Norfolk, Virginia, 4th Cir. 1968, 397 F.2d 37.

4. Cf., the comment in 82 Har.L.Rev. 114 on the *Green* Case: "It may also have been important to the decision (in the *Green* Case) that the County population (involved) was not predominantly Negro, and that therefore the goal of an integrated education for all Negro pupils was feasible, absent white withdrawal." In this same comment, the editors suggest that the *Green* decision left open and unresolved what they described as the "hard questions", such as, "in formulating desegregation plans, what weight is to be given to sound policies of education and school administration; what weight to wishes of southern black nationalists for separation, even where by the lights of the larger community the result will be 'inferior' education; what weight to such evidence as exists that once the ratio of Negro pupils passes beyond a critical point the educational benefits from integration are reduced or lost altogether?" 82 Har.L.Rev. 114–5.

5. A full statement from the State Superintendent of Education of the situation of all the South Carolina school districts, as of March 27, 1969, is appended hereto.

The plans approved by H. E. W. have resulted from serious discussions between the officials of the school districts and representatives of H. E. W. In such discussions, both sides have been favored with the advice of knowledgeable experts in education and school administration, versed particularly in the practical problems posed. The plans finally agreed on have understandably differed from school district to school district. While all have much basic similarity, they do not provide a pattern sufficiently precise to be applied alike to all school districts in South Carolina.

The authority of H. E. W. in this area derives from Title VI of the Civil Rights Act of 1964, 42 U.S.C. Section 2000d, which requires such Department "to assume responsibility for seeing that every school in the United States was (is) desegregated", providing it with the right to terminate federal aid as the instrument of enforcement. 77 Yale Law J. 322. There are thus two governmental bodies, one judicial and the other executive, charged with, and engaged in, the common task of enforcing the 14th Amendment ban against segregation in public schools in South Carolina, though the powers of enforcement of the two are somewhat different. In such a situation, it is inevitable that confusion, even justifiable resentment, will result if there is substantial variation in the requirements imposed separately by the judicial and executive branches in this common task of the two.

■■■ It is true the Courts may not abdicate in the field of education their responsibilities as the traditional guardian of constitutional rights or transfer those responsibilities wholly to the Office of Education; and the guidelines for desegregation promulgated by H. E. W. are "not determinative" or "binding on the courts" (Bowman v. County School Board of Charles City County,

Va., 4th Cir. 1967, 382 F.2d 326, 328, rev. on other grounds, Green v. County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed. 716; Cypress v. Newport News General & Non-Sectarian Hosp. Ass'n, 4th Cir. 1967, 375 F.2d 648, 657, note 15) and may not be deemed "our absolute pole star for determining constitutional rights and duties in the area of school desegregation" (Clark v. Board of Education of Little Rock Sch. Dist., 8th Cir. 1967, 374 F.2d 569, 570). Nonetheless, the guidelines for desegregation issued by H. E. W. "are entitled to serious judicial deference" (Smith v. Board of Education of Morrilton School District No. 32, 8th Cir. 1966, 365 F.2d 770, 780), "respectful consideration" (Bowman v. County School Board, supra, 382 F.2d, at p. 328) and "great weight" (Wright v. County Board of Greensville, Va., D.C.Va.1966, 252 F.Supp. 378, 383) "to the end of promoting a degree of uniformity and discouraging reluctant school boards from reaping a benefit from their reluctance the courts should endeavor to model their standards after those promulgated by the executive" (Kemp v. Beasley, 8th Cir. 1965, 352 F.2d 14, 19, reh. den. 389 F.2d 178); and, "There should be a close correlation, therefore, between the judiciary's standards in enforcing the national policy requiring desegregation of public schools and the executive department's standards in administering this policy" (Singleton v. Jackson Municipal Separate School District, 5th Cir. 1965, 348 F.2d 729, 731). In short, though, "They are not bound, however, and when circumstances dictate, the courts may require more, less or different from the H. E. W. guidelines" (Kemp v. Beasley, supra), "At the least a close partnership between the judiciary and the executive is required" (77 Yale L.J. 365).[6]

Actually, the formulation of appropriate decrees in the cases before the Court present few, if any, justiciable is-

6. See, also, 82 Har.L.Rev. 118: "The existence of parallel administrative and judicial requirements for desegregation has created problems for both H.E.W. and the Courts and has engendered considerable discussion."

sues of constitutional import.[7] Such issues have been largely resolved.[8] The difficulties involved in developing a proper decree concern basically practical operational questions and matters of educational administration. H. E. W., with its staff of trained educational experts "with their day-to-day experience with thousands of school systems", is far better qualified to deal with such operational and administrative problems than the Courts presided over by Judges, who, as one Court has phrased it, "do not have sufficient competence—they are not educators or school administrators—to know the right questions, much less the right answers." United States v. Jefferson County Board of Education, 5th Cir. 1966, 372 F.2d 836, 855, clarified 380 F.2d 385, cert. den. Board of Education of City of Bessemer v. United States, 389 U.S. 840, 88 S.Ct. 77, 19 L.Ed.2d 104, reh. den. East Baton Rouge Parish School Board v. Davis, 389 U.S. 965, 88 S.Ct. 324, 19 L.Ed.2d 103; see, also, Price v. Denison Independent School District Bd. of Ed., 5th Cir. 1965, 348 F. 2d 1010, 1014.[9] Certainly, in the area of administration and practical operation, the "expert advice and planning" of H. E. W. "should not be totally ignored" but, on the contrary, should be utilized by the Courts in developing their decrees of enforcement. Kemp v. Beasley, 8th Cir. 1968, 389 F.2d 178, 185. This seems to be the conclusion of the authors of the comments in 77 Yale L.J. 321 ("The Courts, H. E. W., and Southern School Desegregation") and in 81 Har. L.Rev. 474, and 82 Har.L.R. 118 as to the proper consideration to be accorded by the Courts to the determination made by H. E. W. At the least, it would seem H. E. W. should be solicited by the Courts to provide expert advice and guidance in determining applicable standards and in passing on the adequacy of the desegregation plans submitted by the defendant school districts. From such cooperation between the judiciary and executive branches in this highly complex and difficult field, a greater approximation of uniformity and equality of treatment in plans of desegregation among similar school districts in a State would be possible.

For the foregoing reasons,

■ It is hereby ordered, that all defendant school districts shall promptly submit to the Office of Education, H. E. W., their existing method of operation, along with any changes proposed by them under the order of this Court issued *September 13,* 1968 and shall seek, within 30 days, to develop, in conjunction with the experts of such Office, an acceptable plan of operation, conformable to the constitutional rights of the plaintiffs in these actions, and consonant in timing and method with the practical and administrative problems faced by the particular district. If such plan can be agreed upon by the defendant school district and H. E. W. within the time fixed, the Court will approve such plan, unless the plaintiffs within ten days make proper showing that the plan does not meet constitutional standards. Should the defendant school district be operating under a plan of desegregation approved by H. E. W. for future operation of the school district, such plan shall be adopted as the decree of this

---

7. Cf., Price v. Denison Independent School District, 5th Cir. 1965, 348 F.2d 1010, 1014: "By the 1964 Act and the action of HEW, administration (of school desegregation plans) is largely where it ought to be—in the hands of the Executive and its agencies with the function of the Judiciary confined to those rare cases presenting justiciable, not operational, questions."

8. Cf., however, note 4.

9. See, also, the comments in 81 Har.L.Rev. 1511 at p. 1525, on Hobson v. Hansen (D. C.D.C.1967) 269 F.Supp. 401, appeal dismissed 393 U.S. 801, 89 S.Ct. 40, 21 L. Ed.2d 85, and "the institutional competence of the judiciary to exercise broad review over education," even for purposes of "correcting racially motivated educational policies."

Court, absent some special showing of constitutional infirmity therein. If no such agreed plan is developed within 30 days, H. E. W. is requested to submit promptly its recommendations of an acceptable plan for the school district in question and, absent some special showing by the parties to these actions, the Court shall proceed without further hearings to enter its decree, after due consideration of the proposed plan submitted by the defendant school district, the proposal of the plaintiffs, and the plan submitted by H. E. W.

## APPENDIX

State of South Carolina

Department of Education

CYRIL B. BUSBEE
STATE SUPERINTENDENT OF EDUCATION

COLUMBIA, S. C. 29201

March 27, 1969

M E M O R A N D U M

STATUS REPORT OF SCHOOL DISTRICT DESEGREGATION IN SOUTH CAROLINA

THIRTY-FOUR SCHOOL DISTRICTS HAVE SUBMITTED AND RECEIVED APPROVAL OF PLANS TO COMPLY WITH REQUIREMENTS OF TITLE VI OF THE CIVIL RIGHTS ACT. THESE PLANS WILL BE IMPLEMENTED IN PROGRESSIVE STEPS OVER THE 1968-69, 1969-70 AND IN SOME SCHOOL DISTRICTS UNTIL SEPTEMBER OF 1970. DISTRICTS WITH PLANS EXTENDING TO 1970 HAVE BUILDING CONSTRUCTION THAT VITALLY AFFECTS THE IMPLEMENTATION OF THEIR PLAN:

AIKEN COUNTY

ANDERSON DISTRICTS #1, #2, #5

CHEROKEE COUNTY

CHESTER COUNTY

FLORENCE DISTRICTS #2, #3, #5

GREENWOOD DISTRICT #51

KERSHAW COUNTY

LAURENS DISTRICT #55

LEXINGTON DISTRICTS #2, #4, #5

MARION DISTRICT #2

NEWBERRY COUNTY

OCONEE COUNTY

PICKENS COUNTY

SPARTANBURG DISTRICTS #1, #2, #3, #4, #5, #6, #7

SUMTER DISTRICT #17

UNION COUNTY

RICHLAND DISTRICT #2

WILLIAMSBURG COUNTY

YORK DISTRICTS #1, #2, #3, #4

## Status Report of School District Desegregation
## in South Carolina

FOURTEEN SCHOOL DISTRICTS HAVING A LARGE MAJORITY OF NEGROES HAVING BEEN INSTRUCTED BY THE TITLE VI OFFICE FOR CIVIL RIGHTS TO SUBMIT A PLAN BY SEPTEMBER 30, 1968 TO ELIMINATE THE DUAL STRUCTURE IN 1969-70, HAVE NOT RECEIVED APPROVAL OF A PLAN AS OF THIS DATE:

BAMBERG DISTRICT #1                    FLORENCE DISTRICT #4

BARNWELL DISTRICT #19                  HAMPTON DISTRICT #2

BEAUFORT COUNTY                        JASPER COUNTY

DILLON DISTRICT #1                     McCORMICK COUNTY

EDGEFIELD COUNTY                       ORANGEBURG DISTRICTS #1, #3, #6, #8

FAIRFIELD COUNTY

TWELVE DISTRICTS ARE OPERATING UNDER A COURT ORDER TO DESEGREGATE:

CHARLESTON DISTRICT #20 (District consolidated into county unit but court order is still in effect)

CLARENDON DISTRICTS #1, #2, #3

DARLINGTON COUNTY

DORCHESTER DISTRICTS #2, #3

GREENVILLE COUNTY

LEXINGTON DISTRICT #1

ORANGEBURG DISTRICTS #5, #7

SUMTER DISTRICT #2

SIX DISTRICTS HAVE SUBMITTED BRIEFS IN RESPONSE TO THE JUSTICE DEPARTMENT'S REQUEST TO SUBMIT AN ACCEPTABLE PLAN TO DESEGREGATE OR FACE A SUBPOENA TO DEFEND THEIR DESEGREGATION PLAN BEFORE FEDERAL COURT:

ALLENDALE COUNTY   (Funds have not been terminated)

ANDERSON DISTRICT #3   (Funds terminated March 7, 1968)

DORCHESTER DISTRICT #1   (Funds have not been terminated)

CHESTERFIELD COUNTY   (Funds have not been terminated)

BAMBERG DISTRICT #2   (Funds have not been terminated)

GEORGETOWN COUNTY   (Funds terminated March 25, 1968)

Status Report of School District Desegregation
in South Carolina

THREE DISTRICTS HAVE HAD ADMINISTRATIVE HEARINGS, HAVE BEEN DECLARED BEING IN. NON-COMPLIANCE, AND AN APPEAL IS PENDING BEFORE A REVIEWING BOARD:

FLORENCE DISTRICT #1

GREENWOOD DISTRICT #50

LEXINGTON DISTRICT #3

DECISION OF NON-COMPLIANCE ISSUED BY A REVIEWING BOARD:

LEE COUNTY

DECISION OF NON-COMPLIANCE ISSUED FOLLOWING A HEARING OR DEFAULT PROCEEDINGS:

ORANGEBURG DISTRICTS #2, #4

THREE DISTRICTS HAVE HAD ADMINISTRATIVE HEARINGS WITH ADMINISTRATIVE PROCEEDINGS CONTINUING AGAINST THEM BUT THEY HAVE BEEN TEMPORARILY REMOVED FROM THE DEFERRED STATUS BY AGREEING TO SUBMIT A PLAN TO ELIMINATE THE DUAL SCHOOL SYSTEM BY 1969-70. THIS MEANS ADDITIONAL PROJECTS MAY BE SUBMITTED OR EXISTING PROJECTS ALTERED:

HORRY COUNTY

MARION DISTRICT #1

MARLBORO COUNTY

TWO DISTRICTS HAVE BEEN PLACED IN A DEFERRED STATUS AWAITING AN ADMINISTRATIVE . HEARING:

BERKELEY COUNTY

MARION DISTRICT #4

RICHLAND DISTRICT #1 HAD AN ADMINISTRATIVE HEARING—AWAITING THE DECISION OF THE EXAMINING OFFICER.

COLLETON COUNTY HAS ADMINISTRATIVE PROCEEDINGS CONTINUING AGAINST THEM BUT DEFERRAL OF FUNDS HAS BEEN LIFTED UPON AN AGREEMENT OF THE DISTRICT TO SUBMIT A PLAN TO ELIMINATE THE DUAL SYSTEM.

CHARLESTON COUNTY HAS BEEN GRANTED PERMISSION TO ADOPT A PLAN AND SUBMIT IT FOR APPROVAL BY APRIL 21, 1969.

(The districts listed on this page are at varying stages in the administrative proceedings cycle for non-compliance.)

Status Report of School District Desegregation
in South Carolina

SIXTEEN DISTRICTS HAVE HAD THEIR FUNDS TERMINATED AS OF MARCH 15, 1969 FOR NON-COMPLIANCE:

| | |
|---|---|
| **ABBEVILLE COUNTY | January 29, 1969 |
| ANDERSON DISTRICT #3 | March 7, 1968 |
| ANDERSON DISTRICT #4 | January 19, 1969 |
| BARNWELL DISTRICT #29 | September 14, 1968 |
| **BARNWELL DISTRICT #45 | January 29, 1969 |
| CALHOUN DISTRICT #1 | March 25, 1968 |
| CALHOUN DISTRICT #2 | December 31, 1966 |
| DILLON DISTRICT #2 | December 19, 1968 |
| DILLON DISTRICT #3 | March 25, 1968 |
| GEORGETOWN COUNTY | March 25, 1968 |
| GREENWOOD DISTRICT #52 | March 15, 1969 |
| HAMPTON DISTRICT #1 | September 14, 1968 |
| LANCASTER COUNTY | December 19, 1968 |
| LAURENS DISTRICT #56 | September 14, 1968 |
| MARION DISTRICT #3 | October 16, 1967 |
| SALUDA COUNTY | September 14, 1968 |

**These districts' funds are held in escrow while they submit a plan within 60 days from January 29, 1969. If a plan is not accepted in 60 days, funds will be terminated as of January 29, 1969.

NOTE: There are ninety-three (93) school districts in South Carolina. Anderson District #3, Charleston #20, and Georgetown County have been listed twice.